IN THE CIRCUIT COURT FOR THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| MICHAEL SMITH and ARMINA SMITH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Cause No.: 0922-CC02202 |
| v. ) | |
| ) | |
| COVERALL OF NORTH AMERICA, INC., ) | |
| PACIFIC COMMERCIAL SERVICES, LLC, and ) | |
| RICH WESLEY, ) | Division: 1 |
| ) | |
| Defendants. ) | |

**SERVE:**
**COVERALL OF NORTH AMERICA, INC.**
Registered   Corporate Creations Network, Inc.
Agent:         1001 Craig Rd. - No. 260
                  St. Louis, MO 63146

**SERVE:**
**PACIFIC COMMERCIAL SERVICES, LLC.**
Registered   Rob Moore
Agent:         11775 Borman Drive
                  St. Louis, MO 63146

**SERVE:**
     RICH WESLEY
     680 Craig Road, Suite 260
     Creve Coeur, MO 63141
     or wherever he may be found

2009 JUN 26 AM 11:58

## PETITION

### COUNT I

### BREACH OF CONTRACT

### MISREPRESENTATION

**COME NOW** Plaintiffs Michael Smith and Armina Smith and for Count I of their Petition against Defendant Coverall of North America, Inc., state as follows:

1. Plaintiff Michael Smith and Plaintiff Armina Smith, husband and wife, are, and have been at relevant times, residents and citizens of Missouri.

2. Defendant Coverall North America, Inc., hereinafter referred to as "Coverall" is, and was at all relevant times, a foreign corporation with its principle place of business in Florida.

3. Defendant Coverall was, at relevant times, doing business as "Coverall of Greater St. Louis" with its office at 200 North Broadway, 11775 Borman Drive and/or 680 Craig Road in the St. Louis, Missouri; and has also done business at relevant times as "Coverall Cleaning Concepts."

4. Defendant Pacific Commercial Services, LLC, hereinafter referred to as "PCF" is, and was at relevant times, a foreign corporation, limited liability company or other business association with its principle place of business in Texas.

5. Defendant PCF has, at relevant times, done business in Missouri as "Coverall of St. Louis", "Coverall of Greater St. Louis" and/or "Coverall Cleaning Concepts" with offices at 200 N. Broadway, 11775 Borman Drive and/or 680 Craig Road in St. Louis, Missouri.

6. Defendant Rich Wesley is, and was at relevant times, a resident and citizen of Missouri.

7. Coverall employs thousands of cleaning workers across the United States to perform cleaning work for customers, including customers in and around the City of St. Louis, who negotiate cleaning services accounts with Coverall. These workers have included the Plaintiffs, who performed cleaning work for customers in St. Louis, Missouri and surrounding areas.

8. Coverall required its cleaning workers to sign "franchise agreements" in order to obtain work, and it labels its cleaning workers as "franchisees."

9. On or about November 21, 2001 Plaintiff Michael Smith signed a 43 page written contract known as the "Coverall Janitorial Franchise Agreement" in St. Louis, Missouri. A copy of the title page, table of contents, page 1 and page 23 of the Agreement are attached hereto.

10. In order to induce Plaintiffs and other workers to sign "franchise agreements", Coverall negligently and/or intentionally misrepresented that it had sufficient business to provide the monthly income it promised such workers.

11. Coverall knew or reasonably could have known at relevant times that it did not have and could not provide sufficient business to satisfy the terms of the agreement or comply with its representations when it advertised, solicited and entered into franchise agreements, yet Coverall knowingly and willfully solicited Plaintiffs, and entered into such an agreement with them.

12. Coverall misrepresented that workers such as Plaintiffs would receive a high hourly, weekly or base rate of pay for their work.

13. Coverall's Franchise Agreement, a pre-printed form, is a contract of adhesion establishing the terms and conditions of employment of Coverall cleaning workers such as Plaintiffs.

14. None of the Coverall cleaning workers such as Plaintiffs were able to negotiate for different terms and conditions from those appearing in the form Franchise Agreement.

15. Pursuant to form franchise contracts such as that executed by Plaintiff, workers pay substantial sums of money as "franchise fees" ranging from approximately $6,000.00 to more than $30,000.00 in order to obtain cleaning work.

16. Coverall systematically breached its written agreements by not providing or offering sufficient or adequate work as promised to produce the guaranteed level of income.

17. In exchange for a franchise fee of $6,000.00, Plaintiffs were promised a consistent cash flow of $3,000.00 per month for their franchise business when in fact they made substantially less than half this amount.

18. Coverall negotiated and managed all the accounts for cleaning services and all the money was directly paid to Coverall. Coverall would then pay Plaintiffs after it subtracted its management fees, costs, insurance and other deductions. Many of the fees and costs subtracted were deliberately ambiguous, redundant, excessive and unconscionable given the grossly unequal bargaining positions of the parties. For example, in the month of August, 2006 Plaintiffs had total services bills of $2,856.03, yet after franchise deductions were made Plaintiffs received a net payment of $437.51. For another example, Coverall collected premiums for insurance to cover employees of Plaintiffs even though it knew Plaintiffs had no employees.

19. Coverall engaged in a series of misrepresentations in order to induce Plaintiffs to enter into the franchise agreement, including, but not limited to:

   a. Coverall misrepresented the number of hours per week that would be required to service the accounts offered. The accounts typically required substantially more hours of work than Coverall represented;

   b. Coverall promised to provide Plaintiffs with accounts that were geographically convenient to one another and convenient to the Plaintiffs' home; however, the accounts often were spread very far apart, making it very inconvenient, if not impossible, to accept or perform the work for these accounts; for example, Plaintiffs

were assigned accounts in St. Charles, Missouri, Woodriver, Illinois and Fenton, Missouri, all to be serviced on one night.

c. Coverall misrepresented that Plaintiffs would be independent business people or entrepreneurs who would "own" the accounts assigned to them, and that they could sell the right to such accounts to other Coverall workers; when in fact the accounts belong solely to Defendant Coverall, and Coverall frequently violated the Franchise Agreement by taking accounts away without warning, for no justifiable reason, and without compensation.

d. Coverall misrepresented to Plaintiffs that it would provide specialized training at its facility and assign a trainer to assist them thereafter on the job to allow them to improve and expand their business skills and/or cleaning services;

e. Coverall misrepresented to Plaintiffs that it would provide assistance with marketing and additional business services so that Plaintiffs could not only keep their initial and subsequent customers but also attract new customers thereby expanding their franchise business;

f. Coverall further misrepresented to Plaintiffs that after the initial "start up" phase, Plaintiffs would work on establishing a solid relationship with customers provided by Coverall and that the franchise business would begin to grow over the contract term so that Plaintiffs would be able to enjoy the benefits of a successful business operation; and/or

g. Coverall further misrepresented that if a customer failed to pay Coverall for work done by Plaintiffs, Coverall would absorb the loss and pay Plaintiffs for their labor.

Coverall further failed to disclose that payments would be withheld until accounts had been paid in full even though Plaintiffs had provided the contract cleaning services. For example, there were several instances when an account was not paid or a check had not cleared and Coverall withheld payment from Plaintiffs although Plaintiffs had rendered the cleaning services for that particular account.

20. In reliance upon the statements about the work and income Plaintiff would receive and other misrepresentations and/or omissions of Defendant Coverall mentioned above, Plaintiffs paid the initial franchise fee of $6,000 in installments, plus interest, over a period of years, paid management fees, royalty fees, insurance, purchased cleaning products from Defendant and also invested thousand of hours of personal labor at night cleaning business establishments.

21. On or about May 1, 2006 the management of "Coverall" and/or "Coverall Cleaning Concepts" was assigned or transferred to Defendant Pacific Commercial Services, LLC.

22. Defendant Rich Wesley, on or after May 1, 2006, became the supervisor or manager who controlled the accounts assigned or provided to Plaintiffs, their work and compensation; and was at all relevant times the agent, servant or employee of Defendant Coverall of North America, Inc. and/or Pacific Commercial Services, LLC acting within the course and scope of his agency, service or employment.

23. After May, 2006 when management duties were taken over by Defendant Pacific Commercial Services, LLC and Defendant Rich Wesley, the accounts assigned to Plaintiffs, the work expected from them, the charges accrued against their compensation, and the calculation and payment of their compensation were manipulated in a fashion so that desirable accounts and customers were taken away from Plaintiffs and provided to other workers, customers with a

favorable opinion of Plaintiffs were treated badly by Defendants so that they terminated their relationship with Coverall and Plaintiffs, Plaintiffs were denied compensation, and or compensation payments were delayed without just or reasonable cause or excuse.

24. Defendants breached their contract or agreement with Plaintiffs in one or more of the following respects in that Defendants:

    a. Failed to provide weeks of training;

    b. Failed to provide a trainer;

    c. Failed to pay for work performed if Coverall was not paid by the customer; especially after May, 2006;

    d. Withheld compensation if the customer failed to pay Coverall or if a payment check was dishonored; especially after May, 2006;

    e. Reassigned favorable accounts from Plaintiffs to other cleaners without compensation to Plaintiffs for no good or valid reason; especially after May, 2006;

    f. Reassign favorable accounts from Plaintiffs to new franchise purchasers without compensation to induce new purchasers to buy and keep franchises;

    g. Mismanaged or misused the bookkeeping and clerical systems which were the responsibility of Defendants so that the information provided Plaintiffs was confused, incomplete, inaccurate, contradictory and misleading to such an extent that Plaintiffs could not determine why they were not paid what was due; especially after May, 2006; and/or

      h.      Mismanaged or misused business relationships with customers so that favorable and valuable customers who were pleased with the Plaintiffs' work nonetheless terminated their relationship with Coverall and Plaintiffs.

25.    Plaintiffs were unable to discover or ascertain that Defendants misrepresented the terms and conditions of the franchise agreement during the first years of their work under that agreement as Plaintiffs were reassured by Coverall and reasonably expected or believed that while levels of support provided by Defendant Coverall as well as their compensation was less than had been promised, they would eventually enjoy the benefits which had induced them to pay the initial fee and perform their services; Plaintiffs did not discover the misrepresentations until Defendant PFC and Defendant Rich Wesley began to supervise and manage the Coverall accounts and Plaintiffs' work

26.    As a direct and proximate result of the misrepresentation and breach of contract mentioned above, Plaintiffs were induced to purchase a franchise agreement for $6,000 plus interest and worked for years for inadequate compensation so that during the period from November, 2001 through May, 2006 they lost the benefit of their bargain in the approximate amount of $1,500 per month and during the period May, 2006 through February, 2007 they lost the benefit of their bargain and were damaged in the approximate amount of $2,200 per month.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendant Coverall of North America, Inc. for actual damages in excess of $25,000.00, statutory or nominal damages, punitive or compensatory damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys fees, and/or their costs.

## COUNT II

## BREACH OF CONTRACT

**COME NOW** Plaintiffs Michael Smith and Armina Smith and for Count II of their Petition against Defendants, Coverall North America, Inc., Pacific Commercial Services, LLC and Richard Wesley, state as follows:

1-25. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-25 of Count I of their Petition as if each were set out here word for word.

26. As a direct and proximate result of one or more breach of contract mentioned above, Plaintiffs worked for inadequate compensation so that during the period May, 2006 through February, 2007 they lost the benefit of their bargain and were damaged in the approximate amount of $2,200 per month.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant Coverall North America, Inc., Defendant Pacific Commercial Services, LLC and/or Defendant Rich Wesley, for actual damages in excess of $25,000.00, statutory or nominal damages, punitive or compensatory damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys fees, and/or their costs.

## COUNT III

## MERCHANDISING PRACTICES ACT

**COME NOW** Plaintiffs Michael Smith and Armina Smith and for Count III of their Petition against Defendants Coverall North America, Inc., Pacific Commercial Services, LLC and Rich Wesley, state as follows:

1-26. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-26 of Count I of their Petition as if each were set out here word for word.

27. There was at all relevant times, a statute in effect in Missouri known as the Merchandising Practices Act, Section 407.010 *et seq.* RSMo which reads in pertinent part:

<u>407.010. Definitions</u>
As used in section 407.010 to 407.130, the following words and terms mean:

* * *

(4) "Merchandise", any objects, wares, goods, commodities, intangibles, real estate or services.

(5) "Person", any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or stockholder, associate, trustee or *cestui que* trust thereof;

<u>407.020. Unlawful practices, penalty-exceptions</u>

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce... in or from the State of Missouri, is declared to be an unlawful practice... Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

28. The conduct mentioned above, including that set out in paragraphs 19 and 24, constitutes deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omission of one or more material facts in violation of the Act.

29. As a direct and proximate result of Defendants' unlawful conduct and misrepresentations under the Merchandising Practices Act as mentioned above, Plaintiffs were induced into purchasing a franchise agreement for which they were required to pay thousands of dollars more than what was reasonable and customary, were required to pay additional franchise fees, royalty fees, insurance and other costs and invested thousands of laborious hours performing night time cleaning

-10-

services for inadequate compensation, lost business opportunities, lost the benefit of their bargain with Coverall, and/or suffered humiliation and mental and emotional distress.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant Coverall North America, Inc., Defendant Pacific Commercial Services, LLC and/or Defendant Rich Wesley, for actual damages in excess of $25,000.00, statutory or nominal damages, punitive or compensatory damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys fees, and their costs.

                                                       **THE PERRON LAW FIRM, P.C.**

                                                       */s/ Martin Perron*

                                                       MARTIN L. PERRON, #26783
                                                       MARIA V. PERRON, #31739
                                                       275 North Lindbergh Boulevard
                                                       St. Louis, MO 63141-7809
                                                       (314) 993-4261
                                                       (314) 993-3367 FAX
                                                       mvp@perronlaw.com
                                                       mlp@perronlaw.com
                                                       *Attorneys For Plaintiffs*

*smith-coverall/plead/may 21 pet*